NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIN M. KEARNS,<br><br>Plaintiff,<br><br>v.<br><br>HUNTERS GLEN AP, XIII, L.P., et al.,<br><br>Defendants. | Civil Action No. 09-3092 (TJB)<br><br>MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge,**

This matter comes before the Court upon Plaintiff Erin M. Kearns' ("Kearns") motion for partial summary judgment. Defendants Hunters Glen AP, XIII, L.P. and OP Property Management LLC (collectively, "Hunters Glen") oppose Kearns' motion to the extent Kearns' seeks summary judgment on the issue of permanence. The Court has fully reviewed and considered all arguments and evidence submitted in support of and in opposition to Kearns' motion. The Court considers Kearns' motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, Kearns' motion for partial summary judgment is GRANTED in part and DENIED in part.

**I.   Background**

This is a personal injury matter involving Kearns' claim that she injured her right ankle after being caused to slip and fall on ice on the sidewalk of her apartment complex. Both Kearns and Hunters Glen agree that on December 24, 2008, Kearns slipped and fell injuring her right ankle. Specifically, Kearns' suffered "a trimalleolar fracture of the ankle with a disrupted ankle motise[,]" requiring "open reduction and internal fixation surgery[,]" and developed

"posttraumatic arthritic change and a non-union of the medial malleolus"in the right ankle. (Kearns' Statement of Material Facts Not in Dispute at ¶¶ 3, 4 and 9, admitted by Hunters Glen (*see* Hunters Glen's Legal Analysis and Response to Statement of Facts at 1)).  While Kearns and Hunters Glen agree that the aforementioned injuries were caused by Kearns' slip and fall, they dispute the actual cause of the slip and fall.  The parties also dispute whether Kearns' injuries are permanent as well as the degree of Kearns' injuries.

Via the instant motion, Kearns seeks summary judgment on (1) the diagnosis of her injuries; (2) the causal relationship between her fall and the injuries to her right ankle; and (3) that the injury to her right ankle is permanent.  (*See* Kearns' Br. at 5).  Hunters Glen does not oppose Kearns' motion to the extent Kearns' seeks summary judgment on the diagnosis of Kearns' injuries or on the causal relationship between her fall and her injuries; instead, Hunters Glen only opposes Kearns' motion on the issue of permanence.  (*See* Hunters Glen Opp. Br. at 3).  As a result, Kearns' motion is granted on the first two issues.

With respect to permanence, Kearns argues that summary judgment is appropriate because there are no genuine issues of material fact on this issue.  In this regard, Kearns relies on the opinions set forth in the reports submitted both by her treating physician, Dr. Stuart Hirsch, as well as the defense examining physician, Dr. David M. Smith, to establish that Kearns' injuries are permanent.  For example, among other things, Kearns relies on the fact that "Dr. Hirsch opined that the plaintiff will have progressive arthritic change to the ankle that will lead to increasing functional deficit" and that Dr. Smith opined that "there is a medical probability that the arthritis to the plaintiff's right ankle will progress over time leading to increased pain, decreased motion and loss of function" to establish that Kearns' injuries are permanent.  (Kearns

Br. at 9). Further, Kearns argues that "[w]hile the doctors may disagree in the degree of the permanent functional deficit and likelihood of the need for surgery, there is no dispute that the injuries have resulted in a permanent condition" and Kearns is careful to note that she "is not seeking an Order ruling as to the degree of the plaintiff's disabilities [but instead] [s]he is merely seeking an Order ruling that her right ankle injuries are permanent." (Kearns Reply Br. at 2-3). Kearns contends that such an Order is appropriate because Hunters Glen "has not introduced any evidence that would allow the jury to conclude that the plaintiff's injuries are temporary in nature or that her ankle will return to the way it was before the accident." (*Id*. at 3).

Hunters Glen opposes Kearns' request for summary judgment on the issue of permanence. Hunters Glen argues that this issue "should go before a jury so that a jury may place whatever value it assigns to the injuries in light of the doctors' and the plaintiff's testimony at trial." (Hunters Glen Opp. Br. at 3). In this regard, Hunters Glen contends that "there are clear questions of fact regarding the permanence of the plaintiff's condition." (*Id*. at 4). For example, while Hunters Glen concedes that both Drs. Hirsch and Smith report that Kearns suffers from arthritis at this time, Hunters Glen notes that neither doctor believes that Kearns is a surgical candidate at this time and Dr. Smith reported that Kearns is "currently able to function without the use of prescription pain medication and her condition was stable." (*Id*.) Hunters Glen further argues that, contrary to Kearns' claims, Dr. Hirsch never opined that Kearns' "injuries are permanent, but rather that '[b]ased upon the significant articular changes noted on both the tibial and talar articular surfaces, with reasonable medical probability, progressive arthritic change would be projected for this right ankle'" and that "in Plaintiff's Exhibit G, Dr. Hirsch does not discuss the permanence of the plaintiff's condition, but rather indicates that the plaintiff is not a

3

surgical candidate at this time." (*Id*. at 3, ¶ 14).  As such, because clear issues of material fact exist, Hunters Glen argues that it should be "up to the jury to decide the degree of permanence of the plaintiff's injuries." (*Id*. at 4).

II.     Analysis

    A.     Legal Standard

A party seeking summary judgment must "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (noting that absent sufficient evidence favoring nonmoving party for jury verdict in its favor, no issue for trial exists).  To overcome a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).  The evidence put forth by the nonmoving party "'must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Id*. (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Importantly, in determining whether a genuine issue of material facts exists, "the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *American Eagle Outfitters v. Lyle and Scott Ltd.*, 584 F.3d 575, 581 (3d

Cir. 2009). Further, in rendering this decision, the Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pa Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

B.  **Discussion**

Kearns relies on the following opinions of Drs. Hirsch and Smith to support her claim that there is no genuine dispute concerning the fact that the injuries to her right ankle resulted in a permanent condition:

1.  **Dr. Hirsch's April 22, 2010 Report**

    - At this time, postoperative changes are present including a nonunion of the medial malleolus, posttraumatic arthritic changes including extensive subchondral cyst formation, articular changes on the distal tibia, and the articular surface of the talus. Limited range of motion, diminished sensation, and surgical scarring are all present along with swelling. An altered gait pattern is present.

    - Based upon the significant articular changes noted on both the tibial and talar articular surfaces, with reasonable medical probability, progressive arthritic change would be projected for this right ankle.

    - With reasonable medical probability, that progressive arthritic change will lead to increasing functional deficit. With reasonable medical probability, further surgery would be projected for the right ankle. Both ankle fusion and joint replacement surgery would be appropriate considerations. (Ex. F at 5 to the Certification of Ronald B. Grayzel in Support of Kearns' Motion for Partial Summary Judgment (the "Gayzel Cert."))

2.  **Dr. Hirsch's September 22, 2010 Report**

    - The subchondral cyst formation is consistent with advanced arthritic change. This is present both in the distal tibia and the talus.

5

- Based upon the patient's (relatively young) age at the time, we do not recommend operative care. Operative alternatives include both tibiotalar fusion and total ankle replacement based upon the patient's radiologic changes. Neither of this [sic] surgical procedures will be projected to return the patient to normal function.

- With a reasonable medical probability, this patient will require total ankle replacement in the future. . . . Ankle fusion, produces a permanently altered gait and again is not at this time desirable.

- Currently, the patient's right ankle function is significantly compromised. The patient has an altered limp and gait. A reduced endurance and capacity referable to the right ankle is present. Persistent pain is described.

- A significant portion of the articular surface has been altered by the posttraumatic arthritic changes and subchondral cyst formation. (Ex. G at 1-2 to the Grayzel Cert.)

3. **Dr. Smith's March 29, 2010 Report**

- Clinically and by radiographic studies at the present time, she has developed a non-union of the medial malleolus fracture and early changes compatible with post-traumatic degenerative osteoarthritis of the right ankle.

- She demonstrates mild to moderate musculoskeletal impairment of right ankle function with swelling, pain and decreased range-of-motion.

- [H]er condition is stable and if she can live with her symptoms in regard to her activities of daily living and work, no surgery will be required.

- There is a medical probability, however, that the arthritis of her right ankle will progress over time leading to increased pain, decreased motion and loss of function. (Ex. I at 3 to the Grayzel Cert.)

Kearns further highlights that while Drs. Hirsch and Smith "may disagree in the degree of the permanent functional deficit and likelihood of the need for future surgery," Kearns "is not seeking an Order ruling as to the degree of the plaintiff's disabilities"[;] instead "[s]he is merely seeking an Order ruling that her right ankle injuries are permanent" and "there is no dispute [between the doctors] that the injuries have resulted in a permanent condition." (Kearns Reply Br. at 2-3).

In opposing Kearns' motion for summary judgment on the issue of permanence, Hunters Glen relies on some of the same opinions referenced above by Kearns to argue that genuine issues of material fact exist concerning the permanence of Kearns' condition. For example, Hunters Glens relies on the fact that while both doctors agree that Kearns presently suffers from arthritis, they both also agree that Kearns is not a candidate for surgery at this time. (*See* Exs. G at 1 & I at 3 to the Grayzel Cert.) Additionally, Hunters Glen relies on Dr. Smith's opinion which notes that Kearns does not presently take prescription pain medications and that her current condition is stable. (*See* Ex. I at 3 to the Grayzel Cert.). Based on these opinions, Hunters Glen argues that "there are clear questions of fact regarding the permanence of the plaintiff's condition" and it must be left to the "jury to decide the degree of permanence of the plaintiff's injuries." (Hunters Glen Opp. Br. at 4).

Interestingly, nowhere in the aforementioned excerpts from Drs. Hirsch and Smith's reports is the word "permanent" used. Indeed, while both Drs. Hirsch and Smith provide detailed reports concerning their examinations of Kearns, neither specifically opined regarding the permanence of Kearns' condition. In fact, neither the word "permanent" nor any derivation thereof is contained in any of the doctors' reports. The Court is therefore not privy to either Dr.

Hirsch or Dr. Smith's opinion regarding whether Kearns' condition is permanent. Nevertheless, Kearns argues that the information contained in the doctors' reports can only reasonably support a finding that Kearns' right ankle injuries are permanent.

The Court notes that there is no statutory or other legal definition of the term "permanent" applicable to this case. The Court further notes that because neither Dr. Hirsch nor Dr. Smith used the word "permanent" in their reports, the doctors have not provided a definition for the word. Indeed, not even Kearns provided a specific definition for the word, but instead apparently relies on its ordinary meaning in concluding that there is no genuine dispute that her ankle injury is permanent. Here, despite Kearns' efforts to differentiate the two, the Court finds that the concept of permanence is inextricably intertwined with the degree of Kearns' right ankle injuries. The degree of Kearns' disability clearly involves genuine issues of material fact that may only be appropriately decided by a jury. As a result, it would be inappropriate for the Court to grant summary judgment in Kearns' favor on the issue of permanence.

### III.  Conclusion

For the reasons stated above, Kearns' motion for partial summary judgment is GRANTED in part and DENIED in part. An appropriate Order follows.

Dated: November 18, 2011

                              s/Tonianne J. Bongiovanni
                              **HONORABLE TONIANNE J. BONGIOVANNI**
                              **UNITED STATES MAGISTRATE JUDGE**